**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DIMITRIOS IOANNIDIS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BENEFIT PROGRAM FOR MASS GENERAL BRIGHAM AND MEMBERSHIP ORGANIZATION PLAN (501), et al.,**<br><br>**Defendants.** | **Civil Action No. 25-12197-FDS** |

**MEMORANDUM AND ORDER ON**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

**SAYLOR, J.**

This dispute arises out of alleged violations of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001 et seq ("ERISA"). Jurisdiction is based on 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1367(a).

Maria Ioannidis is an employee of defendant Mass General Brigham. Plaintiff Dimitrios Ioannidis is her former husband. He is a graduate of Boston University School of Law and a licensed attorney in the Commonwealth of Massachusetts. He is proceeding *pro se*.

Defendant Benefit Program for Mass General Brigham and Membership Organization Plan (501) (the "Plan") is an employee benefit plan sponsored by Mass General Brigham. Defendant Benefits Center of Excellence Mass General Brigham (the "Plan Administrator") is the plan administrator.

Dimitrios and Maria divorced in 2018.[1] In December 2018, as part of their separation agreement, the Massachusetts Probate Court ordered that "[a]s long as Wife remains employed and has health insurance available through her employer . . . Wife shall also provide health insurance for the Husband."

The complaint alleges, in general terms, that Dimitrios was a beneficiary of and participant in the Plan, through which he received health insurance; that on multiple occasions, MGB requested verification of his eligibility; that he and Maria provided that verification; that MGB nevertheless wrongfully terminated his coverage; and that he requested copies of the plan documents, and MGB wrongfully refused to provide them.

MGB contends that Dimitrios—who was never an MGB employee—was entitled to Plan benefits only because Maria had elected coverage for him as her spouse. Once Dimitrios and Maria were divorced in 2018, coverage should have been terminated. Instead, MGB mistakenly continued to provide coverage to Dimitrios (and, apparently, certain other former spouses of its employees). Eventually, MGB decided to "grandfather" in those former spouses and provide coverage on an after-tax basis, provided that the participant employee updated his or her human-resources records by January 1, 2022. Maria failed to do so. After correspondence extending over a period of years, MGB determined that Dimitrios was not eligible and terminated his coverage.

On August 5, 2025, Dimitrios filed this action against the Plan, the Plan Administrator, and Mass General Brigham, Inc. Maria is not a defendant. The complaint asserts seven counts: (1) a claim for ERISA to recover benefits and to clarify his continued beneficiary status under 29 U.S.C. § 1132(c)(1)(B); (2) a claim under ERISA for failure to furnish plan documents upon

[1] For the sake of clarity and convenience, the Court will refer to the two individuals by their first names.

request in violation of 29 U.S.C. § 1024(b)(4) and § 1132(c)(1); (3) a claim under ERISA for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3); and (4) in the alternative to the ERISA claims, four counts for breach of common-law fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence.

Defendants have moved to dismiss for lack of subject-matter jurisdiction based on a lack of standing; failure to state a claim upon which relief can be granted; and failure to join a necessary and indispensable party.

For the following reasons, the motion to dismiss will be granted.

## I. Consideration of the Administrative Record

There is a threshold issue as to whether the Court may consider the administrative record in connection with the motion to dismiss. When "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (citation omitted). In the ERISA context, courts regularly consider plan documents, summary plan descriptions, and correspondence between plaintiffs and defendants when considering motions to dismiss. *See, e.g.*, *Perry v. New Eng. Bus. Serv., Inc.*, 347 F.3d 343, 345 n.2 (1st Cir. 2003); *Hudson v. Empire State Carpenters Annuity Fund*, 2013 WL 697135, at *2 (D. Mass. Feb. 25, 2013).

Here, the administrative record includes the following categories of documents: (1) the primary Plan document, (2) the Plan's official guide to benefits for each of the years 2019-2023, (3) the participating employer index, (4) the notice of the PeopleSoft requirement for former spouses, (5) dependent verification letters and responses, (6) notices of ineligibility, and (7) various communications between plaintiff and counsel. Administrative Record, Dkt. No. 12-1.

Plaintiff contends that defendants produced "contrived," "suspect," and "false" documents. In his analysis, however, he simply disputes the characterization or relevance of some of the materials, not their authenticity. The Court will therefore consider the administrative record as properly before the Court. Administrative Record, Dkt. No. 12-1.

## II. <u>Factual Background</u>

Maria Ioannidis is an employee of Mass General Brigham, Inc., and a participant in the Plan. (Compl., Dkt. No. 1 ¶ 8). Dimitrios Ioannidis is her former husband. (*Id.*). While they were married, Maria elected to provide coverage for him as a family member. (*Id.* ¶ 10). Dimitrios thus had group health insurance benefits as a family member through the Plan. (*Id.*).

Dimitrios and Maria divorced in 2018. (*Id.* ¶ 9). As part of their separation agreement, the Massachusetts Probate Court ordered in December 2018 that "[a]s long as Wife remains employed and has health insurance available through her employer . . . Wife shall also provide health insurance for the Husband." (*Id.*).

Because Dimitrios was never an employee of MGB, he was eligible for benefits only because he was Maria's spouse. (Def's Memo, Dkt. No. 12, at 3). MGB contends that once they became divorced, that coverage should have been terminated under the terms of the Plan. (*Id.*).

MGB contends that in approximately 2020, it realized that it was mistakenly providing coverage to certain former spouses of employees who should have been terminated once they were no longer eligible family members. (*Id.* at 2-3). In the fall of 2021, it decided to allow continued coverage for certain former spouses (specifically, those who had a finalized divorce decree as of June 30, 2021). (*Id.* at 3). MGB required, however, that the relevant employee update MGB's electronic human resources records to reflect that the person was a "former spouse," not a current spouse. (*Id.*). The software application used to maintain those records is called PeopleSoft. (*Id.*).

MGB set a deadline of January 1, 2022, to update the records in PeopleSoft. (*Id.* at 3-4). Maria failed to do so by the deadline. (*Id.* at 4).

On May 22, 2023, in response to an inquiry by Maria about Dimitrios's benefits, MGB sent her a clarification letter. (*Id.* at 5). The letter stated:

> Hi Maria, thank you for reaching out to us. I acknowledge that you have a finalized divorce decree as of June 30, 2021. It has come to our attention that you did not update your former spouse's status in Peoplesoft to "former spouse" by January 1, 2022. Consequently, your former spouse has been inadvertently covered as a dependent under your benefits. As we communicated to employees in the fall of 2021, you were given the opportunity to continue coverage for your former spouse if you possessed a formal divorce decree as of June 30, 2021, and promptly updated the status of your former spouse to "former spouse" in Peoplesoft by January 1, 2022. Regrettably, our records indicate that you did not fulfill these requirements. Therefore, we kindly request you to access the Alight portal and remove the former spouse from your coverage, as they are an ineligible dependent. Please note that coverage for the ineligible dependent will be terminated as of 11:59 p.m. on August 31, 2023.

(*Id.*; Exh. Administrative Record, Dkt. No. 12-1, at 580).

On August 9, 2023, MGB again informed Maria that Dimitrios would be removed from coverage under her health plan on August 31, 2023. (Def's Memo, Dkt. No. 12, at 6). That notice provided that any appeal of that determination would need to occur no later than 180 days after the receipt of that letter. (*Id.*).

Dimitrios's version of events is substantially different. According to Dimitrios, he was enrolled as a beneficiary under the Plan. (Compl., Dkt. No. 1 ¶ 10).

In 2023, MGB implemented a dependent verification process. (*Id.*). As part of that process, MGB Verification Center sent an automated message to Dimitrios and Maria stating that they were required to produce either a government issued marriage certificate and federal tax return issued within the last two years listing Dimitrios as spouse, or a government issued marriage certificate and proof of financial partnership issued within the last six months. (*Id.* ¶ 19).

Dimitrios alleges that such documents were required only for current spouses, not former spouses. (*Id.* ¶ 20). Nevertheless, on May 1, 2023, Dimitrios faxed to MGB the requested verification documents to maintain his eligibility for participation in the Plan, including proof of marriage, the separation agreement, and an ancillary supporting document. (*Id.* ¶ 14). That same day, MGB sent Maria an email confirming receipt. (*Id.*)

According to Dimitrios, MGB nonetheless sent repeated requests for documentation on May 12, June 8, and July 7, 2023. (*Id.* ¶ 15). Maria produced the requested documents to MGB in each instance, including copies of the marriage certificate, the judgment of divorce order, and the separation agreement. (*Id.*). On July 28, 2023, MGB confirmed receipt. (*Id.* ¶ 16). That same day, Dimitrios sent the Plan Administrator the same documents by fax. (*Id.* ¶ 17). The Plan Administrator did not respond. (*Id.*). On July 31, 2023, Dimitrios sent the Plan Administrator the same documents once again. (*Id.* ¶ 18). Again, the Plan Administrator did not respond. (*Id.*). On January 7, 2024, Dimitrios sent the Plan Administrator copies of the prior faxed submissions. (*Id.* ¶ 28).

On January 14, 2025, MGB sent Dimitrios and Maria a zip drive. (*Id.* ¶ 30). That zip drive contained a copy of the letter dated August 9, 2023, stating that Dimitrios's coverage would be terminated on August 31, 2023. (*Id.*). Specifically, the letter stated:

> Over the past several months, we have been trying to reach you regarding the dependent verification process. We have not received your documentation, or the documentation you provided was insufficient to verify the eligibility of one or more people of the people you have enrolled in medical/dental/vision plans.

(*Id.* at 22). Dimitrios alleges that neither he nor Maria received this letter, nor were they made aware of any impending termination or appeal deadline. (*Id.* ¶ 23). Dimitrios also alleges that the letter did not provide specific reasons for termination in a manner reasonably calculated to be

understood by the participant, did not reference the Plan provisions on which denial was based, and did not include information necessary for him to perfect his claim. (*Id.* ¶ 25).

Despite that letter of termination, Dimitrios allegedly continued to receive requests for and provide requested documentation. On January 19, 2024, MGB again requested verification documents. (*Id.* ¶ 27). Pursuant to that request, Maria provided MGB with the requested documents. (*Id.*). On February 22, 2024, Dimitrios again sent the Plan Administrator copies of prior faxed submissions. (*Id.* ¶ 28). On February 23, 2024, Maria received confirmation of receipt for the documents she had provided on January 19. (*Id.* ¶ 27, 29).

On December 11, 2024, Dimitrios submitted a written request to the Plan Administrator by first-class mail requesting copies of "[t]he Plan, all amendments, endorsements, exclusions, and other related Plan documents available to those now or formerly covered under the plan; and the Summary Plan Description." (*Id.* ¶ 32). Dimitrios submitted that request again on January 6, 2025 and January 7, 2025. (*Id.*). On January 7, 2025, the Plan Administrator acknowledged Dimitrios's request but did not provide plan documents. (*Id.* ¶ 34). On January 14, 2025, the Plan Administrator emailed Dimitrios two documents entitled "Guide to Mass General Brigham Benefits" and "Participating Employer Appendix." (*Id.* ¶ 35). The email did not contain the official Plan document. (*Id.*). It also did not include any vendor-prepared documents that Dimitrios alleges were required to make up the complete summary plan description. (*Id.* ¶ 41). The Plan Administrator's email also stated that Dimitrios had been terminated from the Plan based upon his failure to submit the required verification documents, and Maria's failure to update her PeopleSoft account status to "former spouse." (*Id.* ¶ 43).

On January 15, 2025, the Plan Administrator informed Dimitrios that the deadline to appeal the August 9, 2023 denial had passed in February 2024. (*Id.* ¶ 46). On January 27, 2025,

Dimitrios allegedly informed the Plan Administrator that MGB had failed to send the Plan and the complete summary plan description in their January 14 correspondence. (*Id.* ¶ 47).

## III. Procedural Background

Plaintiff filed this action on August 5, 2025. Defendants have moved to dismiss Counts 1, 2, and 3 for lack of subject-matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to join a necessary and indispensable party. They have also moved to dismiss Counts 4, 5, 6, and 7 for failure to state a claim upon which relief can be granted.

## IV. Analysis

### A. Counts 1 and 3

Count 1 asserts a claim that plaintiff is entitled to continued beneficiary status under ERISA and seeks reinstatement of benefits. Count 3 asserts a claim that defendants breached their fiduciary duty under ERISA by misleading plaintiff and seeks equitable relief.

#### 1. Defendants' 12(b)(1) Motion to Dismiss for Lack of Standing

Defendants contend that Counts 1 and 3 should be dismissed for lack of standing. On a motion to dismiss made pursuant to Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993) (internal quotation marks omitted)). A court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

Article III standing is a prerequisite for subject-matter jurisdiction, and "the plaintiff bears the burden of pleading facts necessary to demonstrate standing." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "The heartland of constitutional standing is composed of the familiar amalgam of

injury in fact, causation, and redressability." *Id.* at 731 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504 U.S. at 561, which here is "the plausibility standard applicable under Rule 12(b)(6)," *Hochendoner*, 823 F.3d at 730.

Defendants contend that plaintiff lacks Article III standing because the plan does not provide benefits to former spouses; it only provides continued coverage to former spouses whose ex-partner has satisfied its verification requirements. Therefore, defendants contend, plaintiff has not suffered any deprivation of an entitlement, and he is without standing to assert a claim.

The Court disagrees. To be sure, the Plan does not provide for unconditional continued benefits to former spouses. But defendants provided benefits to a former spouse as long as the employee verified that person's status. That process, at a minimum, created a conditional entitlement for former spouses such as plaintiff. *See, e.g.*, *Thole v. U. S. Bank N.A*, 590 U.S. 538, 540-42 (2020) (holding that plaintiffs did not have standing, but only because their ERISA plan conferred defined benefits such that they would not be impacted by any court judgment). The fact that defendant's claim fails on multiple grounds does not mean it is not justiciable, or that he has no standing to assert it. Accordingly, the complaint alleges a claim that plaintiff has suffered a redressable deprivation sufficient to show that he has standing to bring this action.[2]

**2. <u>Defendants' 12(b)(6) Motion to Dismiss for Failure to State a Claim</u>**

Defendants further contend that Counts 1 and 3 should be dismissed for failure to state a claim because they are time-barred, plaintiff failed to exhaust administrative remedies, and

[2] Defendants also contend that plaintiff's alleged injury is not redressable by this Court because it would require ordering Maria, a non-party, to add plaintiff to her plan. That is not an issue of Article III standing; rather, it is an issue as to Maria's status as a required party under Fed. R. Civ. P. Rule 19, such that the Court cannot grant complete relief without her joined as a party. The Court addresses that issue below.

plaintiff lacks statutory standing. To survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must "take the complaint's well-pleaded facts as true, and . . . draw all reasonable inferences in the plaintiff's favor." *Lowe v. Mills*, 68 F.4th 706, 713 (1st Cir. 2023) (quoting *Frese v. Formella*, 53 F.4th 1, 5 (1st Cir. 2022)) (citation modified). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Counts 1 and 3 are clearly time-barred. ERISA claims under 29 U.S.C. § 1132 have no specified statute of limitations, so courts typically "borrow the most closely analogous statute of limitations in the forum state." *Santaliz-Ríos v. Metro. Life Ins. Co.*, 693 F.3d 57, 59 (1st Cir. 2012). If, however, the parties have contractually agreed to a different limitations period or trigger for claim accrual, courts will enforce those agreements, as long as they are reasonable. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105-06 (2013).[3] Here, Section 7.12 of the Plan states:

[3] Plaintiff does not contend that the Plan's statute of limitations is unreasonable.

> Any Judicial Claim must be commenced in the appropriate court or forum no later than 24 months from the earliest of (A) the date the first benefits were paid or allegedly due; (B) the date the Administrator or its delegate first denied the claimant's request; or (C) the first date the claimant knew or should have known the principal facts on which such claim or action is based . . .

On May 22, 2023, more than two years before plaintiff filed this action, MGB sent Maria a letter in response to a benefits inquiry. The letter stated:

> Hi Maria, thank you for reaching out to us. I acknowledge that you have a finalized divorce decree as of June 30, 2021. It has come to our attention that you did not update your former spouse's status in Peoplesoft to "former spouse" by January 1, 2022. Consequently, your former spouse has been inadvertently covered as a dependent under your benefits. As we communicated to employees in the fall of 2021, you were given the opportunity to continue coverage for your former spouse if you possessed a formal divorce decree as of June 30, 2021, and promptly updated the status of your former spouse to "former spouse" in Peoplesoft by January 1, 2022. Regrettably, our records indicate that you did not fulfill these requirements. Therefore, we kindly request you to access the Alight portal and remove the former spouse from your coverage, as they are an ineligible dependent. Please note that coverage for the ineligible dependent will be terminated as of 11:59 p.m. on August 31, 2023.

Defendants contend that plaintiff knew or should have known the principal facts on which his claim is based on the date the letter was sent, because it provided notice to Maria as to why plaintiff was an ineligible dependent. Plaintiff does not dispute that the letter was sent and that Maria received it. Pl. Opp., Dkt. No. 17, at 7-8. Rather, he contends that the letter did not provide sufficient notice because it did not include information about any appeal rights. *Id.*

Plaintiff misunderstands the requirements of ERISA concerning notice of appeal rights. To be sure, 29 C.F.R. § 2560.503-1(g)(iv) states that any adverse benefit determination under ERISA must include "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." But defendant was not providing Maria or Dimitrios notification of an adverse benefit determination. Instead, it was informing Maria that she had not complied with requirements to maintain

coverage for her former husband, which rendered Dimitrios ineligible for continuing benefits. Because his eligibility to receive benefits as a former spouse was entirely contingent on Maria's employee status at MGB, upon Maria's receipt of the letter, Dimitrios was made constructively aware of the principal facts upon which Counts 1 and 3 are based. And because the letter was sent more than two years before plaintiff filed this action, Counts 1 and 3 are time-barred.

Plaintiff also failed to exhaust his administrative remedies. "A plaintiff who wishes to raise an ERISA claim in federal court must first exhaust all administrative remedies that the fiduciary provides." *Medina v. Metro. Life Ins. Co.*, 588 F.3d 41, 47 (1st Cir. 2009). "Traditional exhaustion principles do include an exception for instances when resort to the administrative route is futile or the remedy inadequate." *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988). However, "[a] blank assertion, unsupported by any facts, is insufficient to call this exception to play." *Id.*

On August 9, 2023, defendants notified Maria that Dimitrios would be removed from coverage as of August 31, 2023. That letter stated that Maria was required to file any appeal within 180 days. Dimitrios contends that any such administrative appeals process would have been futile. In *Drinkwater v. Metro. Life Ins. Co.*, the First Circuit held that a plaintiff in an ERISA case may claim futility only if he or she can show "not the slightest possibility that the plan administrator could be objective, unbiased and act in the best interest of the beneficiary" in reviewing the claim. 846 F.2d at 825-26. Plaintiff makes no such showing here. Maria was timely notified about why her former husband was ineligible and was given notice about when his coverage would be terminated. Therefore, the Court will dismiss Counts 1 and 3.

Because the Court will dismiss Counts 1 and 3, it will not resolve the issues of whether plaintiff has statutory standing or whether Maria is a necessary and indispensable party to the

action. But the latter issue is worth briefly addressing. Plaintiff has brought this suit, claiming that he is entitled to benefits under the Plan. That is clearly not the case, because he is not a Plan participant and Maria did not follow the procedure required to maintain his eligibility for coverage. It may be the case that Maria breached her obligations under the divorce agreement by not maintaining his health-care coverage. But if that is so, that is a claim that plaintiff must assert against Maria, not against defendants, and that is a matter for the state courts, not this court, to resolve.

**B. <u>Count 2</u>**

Count 2 alleges that defendants failed to furnish plan documents when he submitted a request for them on December 11, 2024, January 6, 2025 and January 7, 2025, and are therefore liable for statutory penalties. Under 29 U.S.C § 1024(b)(4), the Plan Administrator is required to "furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description." But plaintiff is neither a participant in nor beneficiary of the Plan. As a former spouse, he was rendered ineligible for the Plan after Maria failed to satisfy the PeopleSoft requirement. Therefore, the Court will dismiss Count 2.

**C. <u>Counts 4, 5, 6, and 7</u>**

Counts 4, 5, 6, and 7 allege state law claims of breach of fiduciary duty, breach of contract, breach of implied covenant of good faith and fair dealing, and negligence. ERISA provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). "A state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Orabona v. Santander Bank, N.A.*, 141 F.4th 1, 7 (1st Cir. 2025) (citation modified). That test is satisfied if "the court's inquiry must be directed to the [ERISA]

plan." *Id.* (alteration in original); *see also Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 52 (1st Cir. 2000) ("We have consistently held that a cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action.").

Because the claims at issue clearly relate to an ERISA plan, plaintiff's state-law claims are entirely preempted. Accordingly, defendants' motion to dismiss Counts 4, 5, 6, and 7 will be granted.

## V. Conclusion

For the foregoing reasons, the motion of defendants to dismiss for failure to state a claim upon which relief can be granted is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: September 24, 2026